Council will come forward, please. Mr. Phelps. Your Honor, I'd like to reserve five minutes. Okay. Put five on the clock and you'll have five left if you need to use it. All right. Thank you, Your Honor. Right ahead. Your Honor, may it please the Court and the Council. Your Honor, this is a – I'm sure the Court's well briefed on this case at this point, but essentially we have a three-part argument that there was outrageous government conduct and the use of the paid confidential informant, in this case, Mr. Dave Palmer. And then the other part was that there was an entrapment defense proffered and that the Court should have ruled on that as a matter of law. They didn't. The jury was instructed on entrapment, were they not? I believe the jury was instructed on entrapment, Your Honor. Do you have any objection to – we understand you wanted that ruled on as a matter of law, but was there any objection at trial to the form or content of that instruction? Not that I'm aware of, Your Honor. And by its verdict, the jury rejected that factual defense, correct? Well, I believe the jury did. But the other and the third issue is that the Court limited the confrontation as to the confidential informant or the paid informant in this case, Mr. Palmer. So the district court didn't allow cross-examination on a 30-plus-year-old criminal conviction? Well, that and also the aspects of the fact that there was other law enforcement agencies, I believe King County, Spokane County, Spokane City Police Department, who had used Mr. Palmer in the past. And because of activities that he had been involved in and things that he did while working as a paid informant, they elected not to use him any further. How would that be relevant? Well, I think it's relevant on several areas. One is essentially Mr. Palmer had worked for a considerable period of time as a paid informant, working for a number of agencies. A number of those employers, if you will, had decided that they weren't any longer going to use him because of problems in his credibility, problems in the way he approached females. And it seems like he had a plan, a motive, and a normal course of going after female women, usually those involved in prostitution or something of that nature, and targeting them to get them involved in drug activities and then use them as people that could be induced to become involved in trafficking and drugs. Was there any real dispute about what happened here? I think there is a real dispute about what happened. To the extent that Mr. Palmer utilized psychological coercion, that he would apply on the victim here, well, Ms. Hyatt and other women, and I think that the court's failure to allow the defense to delve into other people, the other prior situations that Mr. Palmer had been involved in, if anyone's looking to have somebody work in a particular area, you want to know what the experience has been with prior employers, what type of problems that they've had. The jury wasn't allowed to hear what prior employers, if you will, of Mr. Palmer felt or why they would no longer use him. That's a standard thing that most jurors can relate to. This man won't be employed by the Spokane Police Department, the Spokane County Sheriff's Office any longer, because of activities that he was involved in related to the ability of the agency to control him. And remember, in this case, with a confidential informant or a paid informant, he is the government's case. With a confidential informant and somebody of this nature, that's the entire case for the government. And the best way to attack the government's case is if you can attack his credibility, the ability of the agents to control that person, and their ability to manage him. And here there's a significant question, based upon prior operations and prior use, about whether or not Mr. Palmer could be controlled and how the government's failure to control him might have played in the way he induced or that he convinced Ms. Hyatt to become involved in criminal activity, the predisposition of Ms. Hyatt to become involved in criminal activity. And when the defense is not allowed to attack the credibility or the prior employment and the prior use of this confidential informant, their ability to confront that case is significantly weakened. And again, in a purchase of a control, in a situation like this where it's supposed to be controlled, but you have a confidential informant or a paid informant who's not reliable and induces women, or in this case Ms. Hyatt, to become involved in criminal activity, and it can't be monitored or he can't be controlled, that becomes an issue in the case. They weren't allowed to fully explore that. And that therein becomes a problem in whether or not they were allowed an opportunity to confront him. And I think the Van Arsdale case deals with that. And what we have to show, if there might have been a reasonable jury, if the jury might have received a significantly different impression of the government's witness in this case, if we were allowed to confront that witness and question him about those things, or if we were allowed to bring other witnesses to say, he worked in the Spokane City Police Department, we won't use him anymore. Okay. You're a little bit into your rebuttal time. I'll sit back down. Thank you for your argument. We'll hear from the United States at this time. Mr. Ahmed? Good afternoon, Your Honors. May it please the Court, Mr. Phelps. Your Honor, my name is Ani Ahmed. I represent the United States. In arguing this case, there are three elements that the defendant brings up. First, outrageous conduct. And this all started with a letter that was produced by Lieutenant Bailey, and I think this Court addressed that letter in its recent decision in the Lopez-Koenig case that was filed back in July of this year. That letter addressed Mr. Palmer, who was the confidential informant, his prior conduct. Lieutenant Bailey did testify at the preliminary hearing and indicated that he deemed Mr. Palmer's conduct to be undesirable. I think he changed it from unreliable to undesirable. And that was based on allegations that in 1992 and 1993, Mr. Palmer was charged with committing rape on two different females. Both charges were dropped. They were not prosecuted. In fact, as Judge Shea indicated in his decision denying the defendant's motion, he underwent a polygraph, and there was nothing to corroborate that the rape, in fact, happened back in 1993. Other than that, he had a 1973 conviction for kidnapping, which also involved an allegation of rape in that case as well. So the defendant argues that using this confidential informant is outrageous and that the defendant should be allowed to have brought this up before the jury. However, I think the United States admits that Judge Shea correctly found that those instances certainly did not go to his credibility as far as truthfulness or untruthfulness, and rightly under Rule 608, did not allow that evidence to be admitted. Certainly, the defendant the sole intent, the United States believes, for the defendant to profit that evidence was to inflame the jury. It certainly was not relevant. In this case, what we had was Ms. Hite was going to profit, admittedly so, based on her own testimony from this drug deal, at least $3,000 to $5,000. She willingly contacted the source in Pasco. She drove to the source's house in Pasco alone, without Mr. Palmer in her vehicle, and brought the cocaine with Larry Booth, who was the source, to the meat location where she was eventually arrested. There's nothing to indicate that she was coerced to commit a crime that she was not predisposed to commit. As Mr. Booth testified in cross-examination, he indicated that, in fact, Ms. Hite had dabbled in cocaine on prior occasions, and that Ms. Hite had contacted him. There was a video of Ms. Hite shown to the jury where she contacts Larry Booth to arrange the drug deal, and specifically asked him about 2 to 3 kilograms. Mr. Booth testified that, in fact, he only had 1 kilogram, and that's what he was able to produce. At trial, there's a photograph that was admitted into evidence where Ms. Hite is actually giggling and laughing, and the jury could see this. She was a willing participant, and while Mr. Palmer did initiate the conversation, that's nothing remarkable. That happens every day where the government does ferret out criminal activity by going to individuals and asking them if they, in fact, can provide cocaine or like-controlled substances. So nothing remarkable about that. The United States submits because she was not coerced, because she was willing, because she profited. She certainly – there was no entrapment in here. In fact, there was no objection to the instruction. The United States – the entire pattern instruction was provided to the jury, and the jury chose to accept the fact that she was not entrapped in this case. As far as the 608 evidence, Your Honor, it's black-letter law right there. I mean, we are talking about a rule that specifically prohibits this type of evidence to come in because it is irrelevant, and the prejudicial effect, as Judge Shea found, the prejudicial effect of the evidence greatly outweighed its probative value. And if there are no questions about a court, I'll end right there. I don't see any. Thank you for your argument. Thank you. Rebuttal? Your Honor, the evidence in this case was important. It was relevant, particularly in light of the government. The judge in this case said that while it wasn't particularly appealing that the government was using somebody such as Mr. Palmer, who, by the way, the conviction that was old had been a kidnapping conviction that involved some sexual activity. And I would just point out that oftentimes when people are convicted of that in state court or in many jurisdictions now, they have to register for the balance of their life as a sex offender. Certainly there must be some recognition by some government agency that people that are involved in kidnappings that involve sexual activity are dangerous, and that's a problem that continues throughout their life and doesn't just end within 10 or 30 years, but it's a particular pattern of behavior that we need to be protected from. Yet the government in this case is using Mr. David Palmer, who then subsequently had allegations of rape, although counsel indicates that those were never filed. We don't know if they weren't filed because of his association with government working as confidential informer or what, but we do know that at least a number of agencies have decided they're not going to use him anymore. The jury didn't know that. The jury never heard that information. Obviously that goes to his motive, his predisposition, the way that he works with females, and the way that he interacts with females, and that's all relevant and things that the jury should have heard. And if they had heard them, it's certainly likely that that might have changed their perception of Mr. Palmer and his credibility, his reliability, and the fact that two or three prior employers said, we're not using him anymore, we can't trust him, there's problems with it. The jury didn't hear that. If they had heard that, that entire case would have been significantly impacted, and it doesn't just go to the bias or the credibility of the witness. It goes to his motive, his intent, his plan, his pattern of behavior, and nobody heard that. And that goes to the entrapment defense, and it's part of the outrageous conduct. So there's a synergy of these three defenses here that no one ever heard about in terms of the jury that ultimately made the decision about Ms. Hyatt. But certainly it came out in front of the jury that she had been involved in prostitution and how that might affect her credibility. So when you weigh and balance that against the government's agent being protected, while the defendant is repeatedly questioned about her prostitution and her background is besmirched by that, and I noticed in reviewing even the trial document that at one point Ms. Whitaker refers to her as a lady, and the district court judge, who I have a great deal of respect for, but he stopped her and said, wait a minute, wait a minute, lady? And he corrected her and said she was a prostitute. That shows how it affected the judge at that level. And the jury heard she was a prostitute, but they never heard anything about what Mr. Palmer did and what his background was and how he couldn't be employed by law enforcement agencies doing what the DEA employed him to do. That's significant information the jury should have heard. Thank you. All right. Thank you both for your arguments. The case just argued will be submitted for decision. We'll proceed to the third case on the argument calendar this afternoon, which is the United States v. Heller. Counsel will come forward.
judges: Hawkins, McKeown, Bybee